IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN REDDING, | : | CIVIL ACTION NO. **3:CV-06-2254** |
| | : | |
| Petitioner | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| RONNIE HOLT, WARDEN, | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On November 21, 2006, the Petitioner, Franklin Redding, formerly an inmate at the Federal Prison Camp- Atlanta, and currently an inmate at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), filed an 18-page Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241, with attached exhibits, A-D. (Doc. 1).[1]  The Petitioner filed an application for leave to proceed *in forma pauperis.* (Doc. 2).  On November 22, 2006, we issued a Show Cause Order and

---

[1] 28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws of the United States . . ."  Petitioner claims in part that his disciplinary hearing violated his due process rights and that he has not seen any evidence to show he committed the charged prohibited acts, and he seeks the removal and expungement of the charges and the restoration of all of his good time days (*i.e.* 27, 27 and 40 days, respectively, for the 3 charges). (Doc. 1, pp. 17-18 & Ex. A, p. 4).      Thus, Petitioner has properly brought his claims affecting the length of his confinement in a habeas petition.  *See Nelson v. Campbell*, ____ U.S. ___, 124 S.Ct. 2117, 2124 (2004).  However, as discussed below, Petitioner 's injunction motion request  (Doc. 9)  to have his telephone privileges reinstated  by  the court so that he can speak with his three children are not core habeas claims cognizable in his Habeas Corpus Petition.  Nor does Petitioner show, as Respondent argues (Doc. 15, p. 4), irreparable harm if injunctive relief is not granted.

we directed service of the Petition (Doc. 1) on Respondent.[2]  On December 13, 2006, Petitioner filed a Motion for Emergency Preliminary Injunction  seeking the Court to order the BOP to reinstate his lost telephone privileges until the Court decides the merits of his Habeas Petition so that he could speak with his three children.  We directed Respondent to respond to Petitioner's Injunction Motion, and he did on December 22, 2006.  (Docs. 9 & 15).  Since we now address the merits of Petitioner's habeas petition, it appears that his Injunction Motion is moot.  We shall thus recommend that this Motion be denied as such.  Further, we agree with Respondent that Petitioner does not show irreparable harm with respect to his Injunction Motion.

Petitioner essentially contends that his due process rights were violated when he was an inmate at FPC-Atlanta, during a disciplinary hearing on May 1, 2006, when he was found guilty of the three charged violations in an April 7, 2006 Incident Report.  The United States District Court for the Middle District of Pennsylvania has jurisdiction over Petitioner's habeas  petition even though the claims arise from a disciplinary hearing at FPC-Atalanta since Petitioner was confined in the Middle District of Pennsylvania when he filed his petition.[3]  Petitioner claims, in part, that there was insufficient evidence to support the charged conduct, that he was not given the right to

---

[2]Petitioner names as the Respondent  the Warden at FCI-Schuylkill, Ronnie Holt, who is the proper Respondent.  28 U.S.C. Sections 2242 & 2243.

[3]We note, as Petitioner recognizes in his Petition (Doc. 1, p. 1), that Warden Holt is the proper Respondent with custody over Petitioner since Petitioner is confined at FCI-Schuylkill.  Petitioner is an inmate at FCI-Schulykill and thus, this Court has jurisdiction over his Petition. *See Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2718, 2722 (2004) (habeas jurisdiction rests in the district of confinement).

call witnesses and was not given time to prepare a defense, that he was not given 24-hour notice of the charges, that he was not allowed to review the evidence used to find him guilty, and that he did not get an impartial hearing officer. (Doc. 1, p. 3). Petitioner states that to this day, he has not seen the evidence used to find him guilty of the prohibited acts. (*Id.*, pp. 17-18). Petitioner also argues that one of the offense codes of the charged conduct was amended on the day of his hearing, and that he was not given the required notice for this revision. In fact, it appears that Petitioner filed a Motion for Reconsideration (Doc. 26) of our Order (Doc. 25) denying his Motion to Compel to indicate that he wanted Respondent to provide him with the Inmate Rights Form with respect to the amended charged offense. The form we directed Respondent to give to Petitioner in our Order was not the one he was seeking. However, as Respondent points out, there was no Inmate Rights Form with respect to the amended charged offense. Rather, Petitioner was advised of the revision by the DHO at his hearing, he was re-advised of his rights, and Petitioner agreed to proceed with the hearing. (Doc. 31, pp. 2-3). Thus, we shall recommend that Petitioner's Motion for Reconsideration (Doc. 26) be denied.

Petitioner basically contends that he was denied his due process rights during his disciplinary hearing. Respondent was served with the Petition. Respondent has filed his Response to the Petition with Exhibits on December 22, 2006. (Doc. 14). Petitioner was granted an extension of time to file his Traverse and he filed it, with attached exhibits, on January 23, 2007. (Docs. 18 and 24). Thus, the Habeas Petition is now ripe for consideration.[4]

As stated, Petitioner also filed a Motion to Compel Discovery, which we denied by Order

---

[4]Petitioner attached his Declaration is support of his Habeas Petition, Doc. 1, Ex. D.

of January 24, 2007, but directed Respondent to provide Petitioner with a copy of his Inmate Rights Form regarding the April 7, 2006 Incident Report.   (Doc. 25).   Petitioner filed a Motion for Reconsideration of our Order denying his Motion to Compel, and on February 5, 2007, he filed a Motion for Writ of Mandamus seeking the Court to grant his habeas petition and expunge the Incident Report at issue and restore his lost privileges. (Docs. 26 and 29).[5]

On February 12, 2007, Respondent filed an opposition brief to Petitioner's Motion for Reconsideration. (Doc. 31).  As stated above, Petitioner filed his Motion for Reconsideration of our Order denying his Motion to Compel since  he wanted Respondent to provide him with the Inmate Rights Form with respect to the amended charged offense.  The form we directed Respondent to give to Petitioner was not the one he was seeking.  Petitioner seemingly knows no such form exists, and he asserts that this is proof that he did not receive notice of the revised charge against him. However, as Respondent points out, there was no Inmate Rights Form with respect to the amended charged offense, *i.e.* the Code 305 offense was changed to a Code 108 offense.   Rather, Petitioner was advised of the revision by the DHO at his hearing, he was re-advised of his rights, and Petitioner agreed to proceed with the hearing.  (Doc. 31, pp. 2-3).   Therefore, there is no other Inmate Rights Form indicating Petitioner's written waiver of his right to 24 hours notice of the revised charge.  Thus, we shall recommend  that Petitioner's Motion for Reconsideration (Doc. 26) be denied.

---

[5]Petitioner's Brief in support of his Motion for Writ of Mandamus was incorporated into his Motion, but this single filing was docketed twice by the Clerk of Court, once as Petitioner's Motion and once as Petitioner's Brief, as Docs. 29 and 30, respectively.

Moreover, since Petitioner's Writ of Mandamus seeks this Court to grant his habeas petition and order the relief he requested in his habeas petition, we shall not address this writ separately from our discussion of the merits of Petitioner's habeas petition as it pertains to the same issues addressed herein.

In his Petition, as stated, Petitioner essentially claims as follows: his prison disciplinary hearing was in violation of his Fifth Amendment due process rights; the DHO was not an impartial and qualified hearing officer; and the evidence against him at his disciplinary hearing was insufficient to find him guilty of the charges in the incident report (*i.e.* Codes 299, 217 and 305, amended to 108) and the sanctions imposed were not supported by the evidence. (Doc. 1, p. 3, and Doc. 24, pp. 1-2).[6]

The Petition was served on the Respondent, and his Response with attached Exhibits was filed on December 22, 2006. (Doc. 14 and Exs. 1 & 2). Petitioner filed a Traverse with exhibits on January 23, 2007. (Doc. 24). The Petition is now ripe for disposition.

---

[6]Petitioner argues, in part, that he was not given 24 hours written notice that the Code 305 offense was changed to the Code 108 offense on the day of his hearing. Petitioner also claims that he did not possess a cell phone and money, and that the BOP had no evidence to show he did. Petitioner also sates that he did not sign a waiver of rights form indicating that he waived his right to 24 hours notice with respect to the changed offense Code. (Doc. 24, p. 2). Petitioner claims that he there was no evidence to support his guilty finding by the DHO. Thus, he claims that his conviction should be expunged, his lost GCT restored, and his loss of privileges reinstated. Petitioner also requests that this Court direct the BOP to transfer him to a prison in the region of his home. (*Id.*, pp. 14-15 and Doc. 1, pp. 17-18).

**II. Habeas Claims.**

In the instant Habeas Corpus Petition, as well as the Traverse, Petitioner challenges his disciplinary hearing conviction on the April 7, 2006 incident report (#1453268) at FPC-Atlanta charging him with Code 299 disruptive conduct (like Code 200A, escape), Code 217 receiving money for the purpose of introducing contraband, and Code 305 possession of anything unauthorized. (Doc. 14, Ex. 1, p. 8).[7] Petitioner claims that there was no evidence to support his guilty finding of the charged offenses and that there was no evidence to support his disciplinary sentence. He also claims that his disciplinary hearing was violative of his Fifth Amendment due process rights since the DHO was not impartial and he did not get 24 hours written notice of the change in offense Code 305 to Code 108 (possession of a hazardous tool, cell phone).

Petitioner requests the Court to expunge his disciplinary conviction and the sanctions imposed with respect to his guilty finding. As mentioned, Petitioner bases his request on his assertion that there was no evidence to support the charged offenses since he did not possess a cell phone or money. Petitioner also argues that he is not seen on the surveillance camera leaving FPC-Atlanta.

Petitioner further states as follows:

> In this case, the petitioner was found to have committed the prohibited acts of Code # 299, Conduct which Disrupts, most like, Code 200A, Aiding Escape from the Atlanta Federal Prison Camp and Code 217, Receiving Money from any Person for any illegal or prohibited purpose and Code 108, Possession of a Hazardous Tool (Cell phone). Yet Redding will point out to this "Court"

---

[7]Since Respondent has Bates stamped the page numbers for his Ex. 1 and attachments thereto, we shall refer to those page numbers herein.

there was never "<u>no money found</u>," there was <u>no cell phone found</u>.  Redding
was never identified on any surveillance camera footage; the DHO has
already stated in her findings that no confidential informants have been used
in Redding's case (see DHO Findings), the other statements from the inmates,
the DHO has testimony and therefore it should not be considered. (See DHO
Findings).

(Doc. 24, p. 4).

Thus, Petitioner argues that there was insufficient evidence to support the charges  he was

found guilty of committing, and that the DHO sanctions were not supported by the evidence.  The

sanctions Petitioner received were as follows:

> 299/200A: Transfer
> D/S 30 days
> Dis GCT 27 days
> LP Visit 90 days
> LP Comm 90 days
> LP Phone 90 days
>
> 217: D/S 30 days (Suspended for 180 days)
> Dis GCT 27 days
> LP Comm 90 days
> LP Phone 90 days
> LP Visit 90 days
>
> 108: D/S 30 days (Suspended for 180 days)
> Dis GCT 10 days
> LP Phone 180 days

(Doc. 14, Ex. 1, p. 11).[8]  (*See also* Doc. 1, Ex. A, p. 4).

---

[8]Respondent concedes that Petitioner has exhausted all of his BOP administrative
remedies with respect to his DHO due process claims raised herein.  (Doc. 14, p. 2, n. 1).

Specifically, the Petitioner's claims at issue are that there was insufficient evidence to support the charges of which he was found guilty by the Disciplinary Hearing Officer ("DHO") and to support the stated sanctions imposed by the DHO, that the DHO was not impartial, and that he was deprived of his due process rights since he did not get written notice of the charges 24 hours prior to this DHO hearing. (Doc. 24, pp. 1-2). Petitioner argues that there was no evidence that he possessed a cell phone and money, and that there is no waiver of inmate rights form showing that he waived his notice of the revised charge on the day of his DHO hearing. (*Id.*, p. 2). Thus, he contends that he could not have been found guilty of charged Codes.

Petitioner contends that he did not receive proper due process rights since he was charged with a new offense and his hearing proceeded without giving him 24 hours notice, and that there was insufficient evidence presented as his disciplinary hearing to support the charges of which he was convicted. In his Petition, Petitioner also challenges the qualifications and impartiality of the DHO. The Petitioner indicates the relief he seeks in his Habeas Petition as expungement of the DHO's decision and the incident report, and the restoration of all good time credits and all privileges which were lost as sanctions. Petitioner also seeks the Court to transfer him back to a prison in a BOP region close to his home.[9] He states that his sanctions, including disciplinary

---

[9]As attachments to his Traverse, Petitioner includes the April 7, 2006 Incident Report and a non-precedential Third Circuit case, *Grieveson v. Cerney*, C.A. No. 03-3208, (3d Cir. 2-25-04), in which the Court found the inmate's due process rights were violated since the DHO changed the offense code, after which he was charged without notice, *i.e.* Code 113, possession of unprescribed narcotic, to Code 198, violation involving interference with staff in performance of their duties, most like, possession of narcotics. The Court found that the inmate knew his medication was prescribed and had not prepared any other defense, including a defense to the revised charge. The Court also found that there was not some evidence to support the revised charge since no unprescribed medication was involved. (Doc. 24, Exhibits 1 & 2).

segregation, loss of various privileges, and 27 days, 27 days  and 40 days, respectively, loss of good conduct time (GCT), imposed by the DHO were not supported by the evidence.[10]  Petitioner is seeking, as mentioned, the removal of the disciplinary conviction and sentence from his record, as well as the return of his lost good conduct time and lost privileges, and a transfer back to a prison near his home.  (Doc. 1, pp. 17-18).[11]

### III.  Injunction Motion.

On December 13, 2006, Petitioner filed a Motion for Preliminary Injunction in which he seeks to have the Court reinstate his lost telephone privileges until the Court decides the merits of his habeas petition.  (Doc. 9).[12]  Respondent argues that there is no likelihood Petitioner will succeed on the merits of his habeas claims, and that Petitioner cannot show any irreparable harm since he can still communicate with his children *via* letters despite not being able to call them. (Doc. 15).  As noted above, since Petitioner seeks the Court to order the BOP to restore his sanctioned lost telephone privileges while his habeas petition was pending with the Court, and since the Court is now deciding the merits of his habeas petition, we shall recommend that the Injunction Motion

---

[10]Petitioner's challenge to his disciplinary conviction and resulting punishment affect the length of his sentence, and as noted above, a habeas corpus petition is the proper remedy.  *See Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002).

[11]In his Traverse, Petitioner reiterates his stated requests for relief, which include requests that the April 7, 2006 incident report and DHO guilty finding be expunged, that his good conduct time be reinstated, and that his disciplinary hearing be overturned.   (Doc. 24, p. 15).

[12] Petitioner's Injunction Motion incorporated his support brief.  (Doc. 9).

be denied as moot.

Moreover, the injury or threat of injury to the party seeking an injunction must be real and immediate. *See Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969) (to show an actual controversy, facts must be alleged of "sufficient immediacy and reality"). Petitioner fails to show that he is in danger of irreparable harm or an injury since we agree with Respondent that he is still able to communicate with his three children through letters. Based on the facts alleged by the Petitioner in his Motion, under all of the circumstances, we do not find that there is a "sufficient immediacy and reality" to warrant the issuance of injunctive relief. *Id.*

Since we find that the Plaintiff is not likely to suffer irreparable harm by denying his injunction request, as he has not proven immediate danger of sustaining a real injury and he has not shown that he is in imminent harm, we shall alternatively recommend that his Motion for Injunctive Relief (Doc. 9) be denied. *See In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

We also find that Petitioner's Injunction Motion claims, that his three children are severely suffering and are being damaged mentally from not being able to visit him and talk to him, are not related to his present habeas due process claims, and they are not properly raised in a § 2241 habeas petition. Petitioner's injunction request, *i.e.* to have the Court remove the telephone privilege restriction placed on him, does not relate to a speedier release from confinement and is not at the core of a habeas petition. As such, the injunction claims are cognizable as *Bivens* claims under 28 U.S.C. § 1331. *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005); *Carson v.*

*Johnson*, 112 F. 3d 818, 820-821 (5th Cir. 1997) ("If a favorable determination ... would not automatically entitle [Petitioner] to accelerated release, the proper vehicle is a § 1983 [civil rights] suit.") (citations omitted).

Thus, we shall recommend that Petitioner's Motion for Preliminary Injunction (Doc. 9) be denied as moot.  We shall alternatively recommend that Petitioner's Motion for Preliminary Injunction be dismissed since, as Respondent correctly argues, there is no showing of irreparable harm by Petitioner (Doc. 15, p. 4), and since his injunction claims are not cognizable in a § 2241 habeas petition.

## IV.  Habeas Discussion.

### 1. *Exhaustion*

It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996). The Respondent indicates in his Response to the Petition that Petitioner has exhausted all of his available administrative remedies regarding his challenge to his disciplinary hearing and sanctions, and apparently the BOP upheld the disciplinary conviction and the sanctions imposed.  The Respondent concedes that exhaustion has occurred in this case. (Doc. 14, p. 2, n. 1).  Accordingly, we find that Petitioner has exhausted his administrative remedies with respect to his present due process claims.

### 2. *DHO Claims*

As stated, the Petitioner claims that his May 1, 2006 DHO hearing violated his due process rights because he was found guilty without sufficient evidence, because the DHO was not impartial,

and because he was charged with a revised offense for which he was not given 24 hours advance notice, *i.e.* Code 305 offense (possession of contraband) changed to Code 108 offense (possession of hazardous tool, cell phone).   Petitioner states that there was no money found, no cell phone found, and that he was not identified on the prison surveillance camera.   Thus, he claims the evidence relied upon to convict him was insufficient. (Doc. 24, p. 4).  Petitioner also claims that he was not given his right to call witnesses, not given enough notice of the revised charge, not given the chance to review evidence used to find him guilty, not given an impartial  DHO and one with a law degree.  (Doc. 1, p. 3).  Petitioner's claim as to not being given a DHO with a law degree is clearly mertiless as Petitioner's own exhibit shows.  Petitioner's *Grieveson* case, attached to his Traverse, Doc. 24, Ex. 2, p. 5, belies his stated claim, as the Third Circuit stated "due process is not violated by allowing non-lawyer DHO's to decide disciplinary hearings."

We also find that the *Grieveson* case does not support our Petitioner's claim that his due process rights were violated since the DHO revised the Code 305 offense to a Code 108 offense at the time of the hearing.  Petitioner argues that he was not prepared to defend the revised offense Code from 305 to Code 108, and that he was not given 24 hours notice of the new charge.  (Doc. 1, p. 8).  In our case, unlike the *Grieveson* case detailed in the note above, the revised offense was similar to the originally charged offense as both offenses dealt with possession of items not authorized, *i.e.* contraband, except the revised offense dealt specifically with possession of a hazardous tool (cell phone).  Further, and more significant, the Incident Report in our case described the offenses for which Petitioner was charged as follows:

12

Description of Incident (Date:4/7/06 Time: 8:00 AM Staff became aware of incident)

Based on surveillance camera footage and corroborated witness statements, an SIS investigation determined that inmate Franklin Redding, Reg. No. 11363-045, received money from other inmates to assist them in departing the environs of the Federal Prison Camp on several occasions. Inmate Redding also had possession of a cellular telephone to communicate with the inmates during their departures and returns. Also, inmate Redding was known and observed departing the environs of the Federal Prison Camp. See SIS investigation case ATL-06-063.

(Doc. 14, Ex. 1, p. 7).

The Incident Report in our case, clearly stated that Petitioner had possession of a cellular phone. Thus, Petitioner can hardly claim he was not able to prepare a defense to the offense revised by the DHO on the day of his hearing, since both the original and revised offense dealt with contraband and since the Incident Report specifically identified what the contraband in question was. Thus, we find *Greiveson* to be distinguishable from our case, especially since inmate Grieveson had no reason to prepare for a defense with respect to the revised offense in his case, and we find our Petitioner had reason to prepare a defense to show that he did not possess a cell phone, the conduct at issue with respect to both the original offense and the revised offense.

Additionally, as Respondent correctly points out, the record shows that Petitioner was told that the Code 305 offense was changed to a Code 108 offense, and he was re-advised of his rights and agreed to proceed with his hearing. Specifically, the DHO noted as follows:

Note: Code 305 was changed to Code 108, as the DHO determined this to be the more appropriate charge. You were re-advised of your rights and elected to proceed with the hearing.

(Doc. 14, Ex. 1, p. 11). Thus, our case is further distinguishable from *Greiveson,* since in *Greiveson*

Case 3:06-cv-02254-RPC   Document 32   Filed 02/23/07   Page 14 of 29

the DHO changed the inmate's charge without notice and deprived the inmate of an opportunity to prepare a defense.  However, in our case, the DHO gave Petitioner notice that his offense Code 305 was changed to Code 108, and he was re-advised of his rights.  Petitioner then elected to proceed with his hearing.  We find, as Respondent asserts, that the record is sufficient, even without a signed inmate waiver of rights form (which there is no dispute does not exist), to show that Petitioner waived his right to be given 24 hours advance written notice of the revised offense. Also, as stated, we find Petitioner's defense to the offense Code 305 would be the same as his defense to the Code 108 offense, since both were based upon Petitioner's alleged possession of a cell phone.

Petitioner also states that he requested witnesses at his disciplinary hearing, but that his witnesses were denied by the DHO.  (Doc. 1, p. 7).  The record reveals at the May 1, 2006 DHO hearing, Petitioner denied the charges in the April 7, 2006 Incident Report, and requested to have case manager D. Reynolds as his witness.  (Doc. 14, Ex. 1, pp. 8-9, ¶ III.).  Reynolds stated as follows:

> "No ma'am, I can't say for certain whether or not he [Petitioner] actually left the Camp.  Some of the unit staff had some concern that the inmates were passing notes back and forth to corroborate their stories."

(*Id.*, p. 9).  The record does not show that Petitioner requested any other witness.  With respect to Petitioner's claim that he was denied his right to witnesses, we find no merit to this claim since the evidence presented at the DHO hearing was undisputed that Petitioner was afforded the chance to present witnesses, and he did present Reynolds and asked for no other witness.  Nor does Petitioner indicate which other witnesses he requested but was allegedly denied by the DHO.

14

Petitioner does not state to what his other alleged witnesses would have testified.   Further, Petitioner offers no evidence to show that he was not allowed to have his witnesses testify at his hearing.   Thus, we find not no merit to this claim of Petitioner.[13]

Petitioner claims that the DHO refused to let him review the documentary evidence used to convict him and claims that there was no evidence to show that he committed the charged offenses. (Doc. 1, p. 9).   In his Traverse, Petitioner points out that no money and no cell phone were found, and that he was not identified in any surveillance camera footage.   Petitioner concludes that there was no evidence to prove he was guilty of the offenses.   (Doc. 24, pp. 4-5).

Respondent argues that there was sufficient evidence for the DHO to find that Petitioner committed the charged offenses. (Doc. 14, p. 6).   Respondent points to the security camera footage and witness statements which corroborated that Petitioner took money from inmates and acted as a lookout for staff while the other inmates exited and re-entered the minimum security prison's grounds.   Respondent states that Petitioner used a cell phone to contact the absconding inmates. Respondent indicates that Petitioner was also seen leaving and returning to the prison camp. Respondent relies upon the DHO Report and his evidence he submitted *in camera*. (Doc. 14, p. 6 & Ex. 2).[14]   In the DHO Report, it was indicated that in addition to the Incident Report and SIS

---

[13]As discussed, the only witness Petitioner called was Reynolds, and he did not request any other witness according to the record.   Nor were any requested witnesses unavailable  to testify at the time of his hearing.

[14]We have permitted Respondent to submit his evidence *in camera* since we agreed with Respondent that the information was sensitive and would be a security risk if it was possessed by an inmate.   The Sealing Order was also required to protect the safety of the inmate witnesses.  Doc. 22.

Investigation, the DHO relied upon Memoranda submitted by the SIA (Special Investigative Agent), as well as handwritten statements submitted by inmates.  (Doc. 14, Ex. 1, p. 9).

Respondent's *in camera* evidence was docketed as Doc. 13.  We have reviewed this evidence.  The statements of the inmate witnesses clearly identify Petitioner (a/k/a "Rockman") as one of the leaders in the scheme to assist other inmates, for the payment of money, to leave the prison camp and return.  It was also stated that Petitioner left the prison camp as well and that he collected the money from the inmates who wanted to go out of the camp.  The inmates who left and returned to the camp brought in food, drinks and clothes.  The statements of the inmate witnesses corroborated that Petitioner was involved in the scheme, for money, to get inmates out of the camp and to re-enter it.  The *in camera* documents also reveal that Petitioner was interviewed about the scheme and denied any involvement with it, and that he denied leaving the camp.  The DHO did not find the statements of Petitioner, and the other charged inmates involved with the scheme, to be credible (Doc. 1, Ex. A, p. 3).  The DHO did not, however, find that the statements of the inmate witnesses were not credible, as Petitioner asserts. (Doc. 24, p. 4).

The inmate witnesses s stated that they paid Petitioner directly to leave camp and that they saw him with a cell phone.  They stated that they would call the inmates in charge on a cell phone, including Petitioner, and that they would then be advised when it was clear to return to the camp. While Petitioner is correct that he was not identified on the surveillance camera footage departing the camp, since most  inmates observed on the footage could not be identified, the corroborating inmate witness statements clearly revealed Petitioner's involvement as a leader with the the coordinated departure and return of inmates to the camp.  Further, the statements of inmates

involved in the scheme implicated Petitioner's role and participation in it.  Thus, even though Petitioner consistently denied any involvement in the scheme, there was clearly sufficient evidence for the DHO to find that he was involved with it based on the statements of the inmate witnesses and the inmates who admittedly were involved with it.  The statements also indicated that Petitioner possessed a cell phone for purposes of advising inmates who left the camp when it was clear to return, and that he was directly paid money to assist inmates who left the camp.  Thus, even though no evidence was produced in the nature of money or a cell phone, the DHO had sufficient evidence, based on the statements of the inmates submitted *in camera*, to find Petitioner was paid money to assist other inmates to leave the prison camp and that he used a cell phone to facilitate their departure and re-entry.

Moreover, as Respondent points out (Doc. 14, p. 6), while Petitioner denied the charges he has offered no evidence to dispute them.[15]  Nor has Petitioner produced evidence challenging the statements of the inmates the DHO relied upon which attest to Petitioner's direct involvement in the stated scheme at the prison camp.  Further, the degree of corroboration in the inmates' statements with respect to Petitioner's role in the scheme shows that they are consistent and provided credible evidence for the DHO to rely upon.

Petitioner also argues that the statements of inmates should not be considered to prove his guilt of the charged offenses. (Doc. 24, p. 4).  Petitioner states that the DHO indicated that no confidential informants were used by the DHO in support of her findings. (Doc. 1, Ex. A, p. 2, ¶

---

[15] The DHO also noted that Petitioner did not offer any evidence to dispute the charges. (Doc. 24, Ex. 1, p. 10).

17

III.E.).  Petitioner states that the statements of the inmates were found by the DHO not to be credible. (*Id.*, p. 3, ¶ V. (4th ¶ on p. 3).

We find that the DHO did not find the statements of Petitioner and of the other charged inmates, who ran the scheme that assisted inmates to leave FPC-Atlanta, to be credible.  However, the DHO did rely upon the SIS investigation and the inmate witness statements submitted by the investigative agent (D. Acre) to find that Petitioner received money from inmates at FPC-Atlanta to assist them in leaving the prison camp grounds on many occasions, and that he possessed a cell phone to communicate with the inmates during their departures and returns to the prison camp. (*Id.*, pp. 2-3).  The statements of the inmate witnesses are included with Respondent's *in camera* documents submitted to this Court. (Doc. 13).  These statements, as discussed, clearly showed Petitioner's involvement with the stated scheme, and provide sufficient evidence to support the DHO's findings in this case.

Petitioner next claims that he was not given all of his due process rights as mandated by *Wolff.* (Doc. 24, p. 5).  Respondent states that Petitioner was provided with all of his rights, and that the 24-hour notice requirement regarding the DHO's change of offense Code 305 to a Code 108 offense was waived by Petitioner. (Doc. 14, pp. 8-9).  As discussed, Respondent indicates that the DHO noted her change of the offense Code, and that Petitioner was re-advised of his rights and elected to proceed with his hearing on May 1, 2006.  The record, as mentioned, supports Respondent. (Doc. 14, Ex. 1, p. 11).  Respondent argues that Petitioner has waived any challenge to the lack of sufficient notice claim he now asserts.  We agree with Respondent based on the record, and based on the fact that Petitioner offers no evidence to show that he did not agree to

18

proceed with his hearing after the DHO changed the one offense Code.  Further, Petitioner offers no evidence to show that his waiver of the 24-hour notice requirement was not voluntarily and knowingly made.

Petitioner received a disciplinary Incident Report (# 1453268) on April 7, 2006, charging him with conduct in violation of BOP Codes 299/200A, 217 and 305.[16]  An investigation ensued. The Incident Report was then referred to the Unit Disciplinary Committee ("UDC") for disposition. (*Id*. at Ex. 1, p. 7).  Petitioner was given the opportunity to make a statement during the investigation, and he did so.  (*Id*.).  Petitioner stated that the report was not true and that he was not guilty.  (*Id*. at ¶ 17.).  On April 11, 2006, the UDC referred the Incident Report to the DHO for a hearing.  (Doc. 14, Ex. 1, p. 7).  The UDC recommended that if found guilty, the Petitioner should receive the maximum loss of GCT, phone, commissary and visitation privileges, and 60 days disciplinary segregation, as well as a transfer.  (*Id*., ¶ 20.).  Petitioner was advised of all his rights and of the charges on April 11, 2006.  (Doc. 14, Ex. 1, p. 8, ¶ I.).  Petitioner requested Reynolds as his witness.  (*Id*.,p. 9).[17]  No other witnesses were requested by Petitioner.

In his Traverse, Petitioner claims that the DHO did not have any evidence to support a finding that Petitioner had committed the acts charged.  Petitioner argues that he was not shown evidence in the nature of a cell phone and money, and that he could not be identified on the

---

[16]*See* Doc. 14, attached Incident Report, Ex. 1, p. 7.

[17]As noted above, Petitioner states as part of his due process claims that he was not allowed to call his requested  witnesses.  As discussed, the record shows that Petitioner only called Reynolds to testify.  This fact is not disputed by Petitioner with evidence.  Thus, we have found no merit to this due process claim.

surveillance camera.  The DHO based her decision on information provided by the SIA, including the stated corroborated inmate witness statements, which Petitioner was made aware of, and the SIS investigation that determined Petitioner received money from other inmates to assist them in leaving the camp on several occasions and that he was in possession of a cell phone to communicate with inmates during their departures and returns.  The DHO also determined that Petitioner departed the camp.  (*Id.*, p. 10).

Further, the Investigation Section on the Incident Report clearly indicated that a factual determination was made as to the appropriateness of the charges  made against Petitioner based on his alleged conduct. (Doc. 14, Ex. 1, p. 7, ¶ 11.).  Thus, we find no merit to Petitioner's claim that there was insufficient evidence to support the DHO's findings.

On May 1, 2006, Petitioner had his disciplinary hearing before the DHO.  (*Id.*, Ex. 1, p. 8 & Doc. 1, Ex. A).  Petitioner did not waive  his right to a staff representative and requested Chaplain Sabree.  (*Id.*).  Petitioner denied the charges and made the following statement, in part, "Not guilty."  (*Id.* at Section III.).

The DHO found Petitioner guilty of charged offenses,  namely conduct which disrupts, most like Code 200A, aiding escape, Code 299, receiving money from any person for an illegal or prohibited purpose, Code 217,  and Code 108, revised from Code 305, possession of a hazardous tool (cell phone).  The DHO's sanctions for Petitioner were detailed above.  (*Id.* at p. 11).

Petitioner also was transferred to FCI-Schuylkill.[18]  Petitioner also asserts that the sanctions

---

[18]As stated above, Petitioner requests, in part, that this Court transfer him back to a prison of the BOP in his home region.  We note that an inmate has no Constitutional right to be confined in any particular prison.  Since Petitioner has no right to be confined at any prison,

imposed by the DHO were not supported by the evidence, since there was no evidence that he possessed money or a cell phone.   However, we have found that the DHO had ample evidence to support her finding that Petitioner committed the charged offense codes, and thus the sanctions imposed for those codes were also supported by the evidence.   Again, we reiterate that Petitioner has not  produced any evidence to dispute the charged offenses.   Rather, he simply points out that he was not identified on the surveillance camera footage, and that he was not shown the money and cell phone he was charged with possessing.   As discussed, the information provided by the SIA and the *in camera* inmate witness statements clearly supported the charges of which Petitioner was found guilty.

Prior to Petitioner appearing before the DHO for his Discipline Hearing, he was advised of his rights.   As stated, he was given advance written notice of the incident report by receiving a copy of it on April 7, 2006.  (Doc. 14, Ex. 1 , p. 8).  The DHO hearing was held on May 1, 2006, and Petitioner indicated that he would proceed with his hearing despite the fact that the DHO changed the original offense Code 305 to a Code 108 offense.  Thus, Petitioner waived his right to 24 hours notice with respect to the revised charge.  Petitioner had  a staff representative, and Petitioner had his requested witness (case manager Reynolds) testify.

Petitioner was also advised of his rights at the DHO hearing.   Petitioner denied the charges.

---

his request for a transfer does not even state a Constitutional claim.  *See Olim v. Wakinekona*, 461 U.S. 238 (1983).

Nor is Petitioner's request for a transfer a core habeas claim, as it does not affect the duration of his confinement.

After reviewing the evidence, the DHO found that Petitioner committed the stated prohibited acts. (*Id*., pp. 9-10, ¶ V.).[19]   The DHO, after finding the Petitioner guilty of the stated charged offenses,  imposed the aforementioned sanctions.  (*Id*. at p. 11).   Petitioner was given a copy of the DHO Report on May 10, 2006.  (*Id*. at p. 12).   Petitioner was advised of his right to appeal the DHO's finding through the BOP's administrative remedy process. (*Id*., ¶ VIII.).  As stated, the Respondent does not contest that Petitioner exhausted these remedies prior to instituting the present action.

### 3.  *DHO Due Process*

While extreme limitations on the due process rights that arise from the Fourteenth Amendment have been imposed by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472 (1995), the applicability of those protections to matters where an inmate is faced with the loss of good time credit was left undisturbed.   We must therefore evaluate the disciplinary proceedings in this context.[20]

Petitioner, as stated, essentially makes two claims.  First, Petitioner contends that he was deprived of his due process rights since the evidence insufficient to support the charged offenses due to the undisputed facts that he was not provided with the cell phone and money he allegedly possessed and, since the DHO revised his Code 305 offense to a Code 108 and did not give him

---

[19]Since the specific evidence upon which the DHO relied to find Petitioner guilty of the stated  offense is contained in the DHO hearing report, Doc. 14, Ex. 1, DHO Report, pp. 9-10, ¶ V., we shall not reiterate it herein.

[20]The BOP's guidelines for inmate disciplinary proceedings are found under 28 C.F.R. §541.10, *et seq*., and we shall not reiterate them herein.   *See also* Doc. 14, pp. 7-9.

24-hours notice of the new charge.  Petitioner also claims that he was denied his right to call witnesses.  As discussed above, we have found no merit to these claims since the inmate statements provided to the Court *in camera,* which were part of the SIS investigation upon which the DHO relied, clearly showed that Petitioner used a cell phone to advise other inmates when to depart and return to the camp, and that he was directly paid money for his assistance in this scheme.  The record also shows that Petitioner was allowed to call a witness and this witness testified.  Petitioner offers no evidence to show that he wanted to call other witnesses but was denied.  Nor does Petitioner show what these other alleged witnesses would have stated.  Further, Petitioner claims that the sanctions imposed by the DHO were not supported by the evidence.  We have also found no merit to this claim.

The April 7, 2006 Incident Report was timely received by Petitioner on the day it was issued and 24 hours prior to his DHO hearing.  This was within the required 24 hours as mandated by his due process rights and BOP policy.  (Doc. 14, Ex. 1, p. 8).  It is undisputed (Doc. 14, p. 9) that BOP policy, namely 28 C.F.R. §541.17(a), requires that the inmate be given advance written notice of the charges against him no less than 24 hours.  On April 11, 2006, Petitioner had his UDC hearing, and he was advised that the incident report was being referred to the DHO for a hearing.  As mentioned, the DHO hearing was held on May 1, 2006.

What is disputed in this case is whether there was sufficient evidence that the Petitioner was guilty of the charged offenses and whether the DHO had sufficient evidence to support the imposed sanctions.  Notwithstanding the facts that the cell phone and money Petitioner allegedly possessed were not shown to him, as discussed, there was clearly enough evidence to find him

23

guilty of the charged offenses.  Therefore, the evidence upon which the DHO relied was more than ample to support her guilty findings.  (*Id.*, ¶ V., pp. 9-10).  We also find that the DHO pointed to the specific evidence upon which she relied to meet the greater weight of the evidence standard.

Due process requires that the prisoner receive written notice of the charges against him no less than twenty-four (24) hours before the hearing;[21] that the prisoner be given a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken; that the prisoner be afforded a qualified right to call witnesses and present documentary evidence in his own defense; and that an illiterate inmate be entitled to help from a fellow inmate.  *Wolff v. McDonnell*, 418 U.S. 539 at 564-571 (1974).  We agree with Respondent that the requirements of *Wolff* were met in this case.

Petitioner was provided with written notice of the charge on April 7, 2006 when he was given a copy of the Incident Report.  (Doc. 1, Ex. 1, p. 7, Incident Report).  As the DHO hearing was convened on May 1, 2006, Petitioner was afforded notice well within the requisite twenty-four-hour period before the DHO hearing.  Petitioner was advised of the one Code offense change, and re-advised of his rights, and he elected to proceed with his hearing.  Thus, we have found that Petitioner waived the 24-hour notice requirement with respect to the one revised Code offense.  Petitioner was also afforded the right to call witnesses, and called case manager Reynolds.  Petitioner exercised his right to have a staff representative.  Petitioner claims that DHO Hislop was not an impartial officer, but we agree with Respondent that Petitioner was not offered a shred of

---

[21]The 24-hours advance notice must be made before the inmate's appearance in front of the DHO.  28 C.F.R. § 541.17(a).

evidence to show she was not impartial. (Doc. 14, p. 10). As stated, Petitioner's own exhibit shows that there is no requirement that the DHO be a law school trained person. The DHO conducted the hearing and articulated the basis for her findings in her DHO Report. (*Id. at Ex. 1*, DHO Report). As to the last requirement under *Wolff*, Petitioner was afforded the right to a staff representative at his hearing, and he called on Chaplain Sabree.

Additionally, the record must be supported by some evidence. *Superintendent v. Hill*, 472 U.S. 445 (1985). "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' *United States ex rel. Vajtauer v. Commissioner of Immigration at Port of New York*, 273 U.S. 103, 106 (1927). Ascertaining whether this standard is satisfied does not require exhaustion of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455, 456. (Citations omitted). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of the prison administrators that have some basis in fact." *Id.* at 456.

Prior to the DHO hearing, Petitioner was advised of his rights. During the course of the disciplinary hearing, the DHO advised Petitioner of the changed offense Code, and he elected to proceed with his hearing. The DHO heard testimony from the Petitioner, who indicated that he was not guilty. The DHO relied upon the written Incident Report and SIS investigation, as well as the supporting documentary evidence, *i.e.*, the inmate witness statements. (Doc. 13). The DHO found that Petitioner was responsible for engaging in the charged conduct based on the evidence

as discussed above.  Further, we find Petitioner's argument that there was insufficient evidence due to the undisputed facts that no money and cell phone were produced  to be completely baseless. Rather, Petitioner's conduct as charged and witnessed by several inmate witnesses, as well as the SIA's investigation, were the bases of the DHO's findings, and this was clearly substantiated by the evidence.

Therefore, we find no merit to the arguments of Petitioner that there was insufficient evidence to find him guilty of the charges  and that he was deprived of his due process rights.  We find that there was sufficient evidence for the DHO's determination that the Petitioner engaged in the charged offenses.

Accordingly, we do not find any merit to Petitioner's due process claims.

### 4. Sanctions Imposed

Finally, we agree with Respondent that Petitioner's sanctions imposed by the DHO were within the range available for the offenses which Petitioner was found guilty of committing. Further, we do not find the sanctions were either arbitrary or capricious.  The sanctions were also within the BOP's policy for the severity of the prohibited acts  of which Petitioner was found guilty. (Doc. 14, pp. 10-11).  28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale, Tables 3 & 4.

We agree with Respondent (Doc. 14, pp. 10-11)  that Tables  3 & 4  of 28 C.F.R. § 541.13 allow for the exact sanctions which the DHO imposed on Petitioner for his high severity offense. We therefore agree with Respondent that Petitioner's stated sanctions for his Code  violations were within the BOP regulations.

26

The DHO also documented her reasons to impose the stated sanctions for the offenses, particularly due to the commission of offenses that aided other inmates in escaping from the prison. (Doc. 14, Ex. 1, p. 11, DHO Report, ¶ VII.).

## V.  Recommendation.

Based on the foregoing, we respectfully recommend that the Petitioner's Habeas Corpus Petition **(Doc. 1)** be denied.  Further, we recommend that Petitioner's Motion for Preliminary Injunction be denied as moot, or alternatively that it be denied on its merits.  **(Doc. 9).**  We also recommend that Petitioner's Motion for Reconsideration/Clarification of our January 24, 2007 Order **(Doc. 26)** be denied, and that Petitioner's Writ of Mandamus be denied. **(Doc. 29).**

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 23, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN REDDING, | : | CIVIL ACTION NO. **3:CV-06-2254** |
| | : | |
| Petitioner | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| RONNIE HOLT, WARDEN, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated **February 23, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

28

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 23, 2007**