IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANKLIN REDDING,                    :
                                     :
        Petitioner,                  :      CIVIL ACTION NO. 06-CV-2254
                                     :
        v.                           :
                                     :      (JUDGE CONABOY)
WARDEN RONNIE HOLT,                  :
                                     :      (Magistrate Judge Blewitt)
        Respondent.                  :

## MEMORANDUM

Before the Court is Magistrate Judge Thomas M. Blewitt's
Report and Recommendation (Doc. 32) recommending Petitioner's
Petition for Writ of Habeas Corpus (Doc. 1) ("Petition") be denied.
Additionally, the Magistrate Judge recommends denying the following
pending filings by *pro se* federal prisoner Franklin Redding
("Petitioner"): Consolidated Motion for, and Brief in Support of
Preliminary Injunction (Doc. 9); Motion/Brief for Clarification and
Reconsideration of Court Order dated January 24, 2007, for Motion
to Compel (Doc. 26); and Petitioner's Motion and Brief for Writ of
Mandamus pursuant to 28 U.S.C. § 1361 Granting the Petitioner's
Petition for Writ of Habeas Corpus (Doc. 29).  For the following
reasons, we adopt the Report and Recommendation and dismiss the
above filings (Docs. 1, 9, 26, and 29) as moot.

I.   **FACTUAL BACKGROUND**[1]

On April 7, 2006, Petitioner received United States

---

[1] The factual background is primarily derived from Respondent's
Response to the Petition for Writ of Habeas Corpus (Doc. 14) unless
otherwise indicated.

Penitentiary Atlanta Special Investigative Agent ("SIA") Darrol Acre's incident report charging Petitioner with the violation of the following prohibited acts: code 299 - disruptive conduct (most like code 200A, which is aiding escape from an open institution); code 217 - receiving money for the purpose of introducing contraband; and code 305 - possession of anything unauthorized. *See* 28 C.F.R. § 541.13 (Table 3 - Prohibited Acts and Disciplinary Severity Scale).  The incident report alleged:

> Based on Surveillance camera footage and corroborated witness statements, an SIS Investigation determined that inmate Franklin Redding, Reg. No. 11363-045, received money from other inmates to assist them in departing the environs of the Federal Prison Camp on several occasions.  Inmate Redding also had possession of a cellular telephone to communicate with the inmates during their departure and returns.  Also, inmate Redding was known and observed departing the environs of the Federal Prison Camp.  See SIS Investigation case ATL-06-043.

(Doc. 14 at 2-3.)  Petitioner asserted the report was untrue and that he was not guilty of the offenses.

On April 11, 2006, Petitioner received notice of his disciplinary hearing and a separate form advising Petitioner of his rights concerning the offenses.  (Doc. 28, Exhibit 1.)  Petitioner indicated he wanted Chaplain M. Sabree as his staff representative at the hearing.  (*Id.*)  Additionally, Petitioner requested Case Manager D. Reynolds as a witness at the hearing.  (*Id.*)

On May 1, 2006, Petitioner appeared for a disciplinary hearing

2

on the above charged offenses.  The requested staff representative,

Chaplain Sabree, appeared at the hearing but stated he lacked

sufficient information to represent Petitioner.  A summary of

Petitioner's statement at the hearing was recorded in the DHO's

report, dated May 10, 2006:

> Not guilty.  Lieutenant Acre said he'd return
> them back to the Camp if they told him
> anything.  There was an FBI agent present.
> After they locked up about six inmates, they
> came and got me about five hours later.  I
> know Martise Williams.  Busby lives in the
> next unit over.  He came to our unit about
> two weeks earlier when he came back from SHU
> (Special Housing Unit) the last time. . . .
> When I cam in, Busby, Williams, and Powell
> told me that all they wanted to know was
> about the police and not to tell them
> anything.  They were scared.

(Doc. 14, Exhibit 1 at 10.)  Additionally, Case Manager Reynolds

appeared and entered the following statement regarding Petitioner's

involvement in the alleged offensive conduct:

> No ma'am, I can't say for certain whether or
> not he actually left the camp.  Some of the
> unit staff had some concern that the inmates
> were passing notes back and forth to
> corroborate their stories.

(*Id.*)  At the hearing, the DHO informed Petitioner the code 305 –

possession of anything unauthorized charge was being changed to a

code 108 – possession of a hazardous tool (cell phone) charge.

Petitioner was re-advised of his rights and decided to continue

with the hearing.  The Disciplinary Hearing Officer ("DHO")

considered SIA Acre's investigation report and handwritten

3

statements of other inmates offered by Petitioner.

On May 10, 2006, the DHO issued her report finding Petitioner guilty of committing the prohibited acts.  Additionally, the report described the amended offense code:

> Note: Code 305 was changed to Code 108, as the DHO determined this to be the more appropriate charge.  You were re-advised of your rights and elected to proceed with the hearing.

(Doc. 14, Exhibit 1 at 12.)

In her report, the DHO described the evidence relied upon in reaching her determination citing information provided by the reporting employee, SIA Acre.[2]  The DHO outlined the information provided by SIA Acre:

> The writer reported based on surveillance camera footage and corroborated witness statements (which you was [sic] made aware

---

[2] The report submitted by SIA Acre to the DHO for consideration included information and statements from other inmates which Petitioner complains he has never seen.  (Doc. 1 at 9.)  In an Order (Doc. 12) dated December 20, 2006, the Magistrate Judge granted Respondent's Motion to Seal and to Submit Documentation In Camera (Doc. 22).  Pursuant to his motion, Respondent submitted these documents to the Court (Doc. 13).  The Magistrate Judge determined the documents warranted sealing due to the security and safety risk to inmate witnesses.  (Doc. 22.)  We will refer to these documents as "*in camera* documents" where appropriate.  We note the practice of a court reviewing documents or other evidence without permitting a party to review the same is referred to as an *in camera* inspection.  Black's Law Dictionary defines "*in camera inspection*" as: "A trial judge's private consideration of evidence."  *Black's Law Dictionary* (8th Ed. 2004.)  As will be discussed in the text, the Third Circuit Court of Appeals has approved of this practice in the context of judicial review of evidence relied upon by prison disciplinary committees.  *See Henderson v. Carlson*, 812 F.2d 874, 880 (3d Cir. 1987).

> of), an SIS investigation determined you
> received money from other inmates to assist
> them in departing the environs of the Federal
> Prison Camp on several occasions.  The writer
> reported you were also[] in possession of a
> cellular telephone to communicate with the
> inmates during their departures and returns.
> Additionally, the writer reported you was
> [sic] known and observed departing the
> environs of the Federal Prison Camp.

(Doc. 14, Exhibit 1 at 11.)  Additionally, the DHO considered the hazardous nature of a cellular telephone in the setting of a correctional institution.  The DHO explained a cellular telephone jeopardizes the security of a prison, its staff, and the general public by providing an inmate the opportunity to make unmonitored calls which can contain threats to the public, plans for escape, or other illegal activity.  Moreover, the DHO cited the Petitioner's denial of the charges and that Petitioner "offered no evidence to dispute the charges."  (Doc. 14, Exhibit 1 at 11.)  The report also cites handwritten statements offered by Petitioner and other inmates in Petitioner's defense.  As recited in the report, the statements were considered by the DHO with other contradictory testimony offered throughout the disciplinary process and were found to lack credibility.  The DHO also found the statements submitted by Petitioner were of lesser weight than the credible information provided by SIA Acre.

The DHO concluded Petitioner committed the prohibited acts. Petitioner was sanctioned with the loss of sixty-four (64) days of good conduct time credits, transfer to a more secure facility, loss

of telephone privileges for one (1) year, loss of commissary privileges for six (6) months, and the loss of visiting privileges for six (6) months.

The BOP concedes Petitioner has exhausted all available administrative remedies regarding his complaints.

## II. PROCEDURAL BACKGROUND

On November 21, 2006, Petitioner, a federal prisoner at the Federal Correctional Institution at Schuylkill ("FCI-Schuykill"), filed *pro se* the instant Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2241.  On November 22, 2006, the Magistrate Judge issued a Show Cause Order and directed service of the Petition on FCI-Schuykill Warden Ronnie Holt ("Respondent"). On December 22, 2006, Respondent filed his Response to the Petition for Writ of Habeas Corpus arguing the Petition should be denied and the case dismissed.  (Doc. 14.)  On January 23, 2007, Petitioner filed his Reply to Respondent's Response to the Petition for Writ of Habeas Corpus (Doc. 24).

On December 13, 2006, Petitioner filed a Consolidated Motion for, and Brief in Support of Preliminary Injunction (Doc. 9) seeking the Court to order the Bureau of Prisons ("BOP") to reinstate his lost telephone privileges pending the Court's disposition of the Petition.  The Magistrate Judge directed Respondent to file a response to the injunction motion.  (Doc. 11.) On December 22, 2006, Respondent filed his Brief in Opposition to

Plaintiff's "Consolidated Motion for, and Brief in Support of Preliminary Injunction." (Doc. 15.)

On January 10, 2007, Petitioner filed a Motion/Brief to Compel the Respondent to Disclose Discovery Under Federal Rule of Civil Procedure 37(a). (Doc. 20.) On January 24, 2007, the Magistrate Judge issued an Order denying Petitioner's motion to compel and directing Respondent to provide Petitioner with the Inmate Rights Form regarding the amended prison offense underlying Petitioner's habeas corpus claims. (Doc. 25.) On January 29, 2007, Petitioner filed a Motion/Brief for Clarification and Reconsideration of Court Order dated January 24, 2007, for Motion to Compel (Doc. 26) claiming the form the Magistrate Judge directed Respondent to provide was not the form requested by Petitioner. On February 12, 2007, Respondent filed his Brief in Opposition to Plaintiff's "Motion/Brief for Clarification and Reconsideration of Court Order Dated January 24, 2007, for Motion to Compel" (Doc. 31). On February 28, 2007, Petitioner filed a reply (Doc. 33) to Respondent's Brief in Opposition to Plaintiff's "Motion/Brief for Clarification and Reconsideration of Court Order Dated January 24, 2007, for Motion to Compel" (Doc. 31).

On February 5, 2007, Petitioner filed a Motion and Brief for Writ of Mandamus Pursuant to 28 U.S.C. 1361 for an Order Granting the Petitioner's Petition for Writ of Habeas Corpus (Doc. 29).

On February 23, 2007, the Magistrate Judge issued his Report

and Recommendation (Doc. 32).  On March 7, 2007, Petitioner filed

objections (Doc. 37) to the Report and Recommendation.  On March

19, 2007, Respondent filed his Brief in Opposition to Petitioner's

Objections to the Magistrate Judge's Report and Recommendation

(Doc. 36).  On March 27, 2007, Petitioner filed a reply to

Respondent's Brief in Opposition to Petitioner's Objections to the

Magistrate Judge's Report and Recommendation (Doc. 36).

Additionally, on March 7, 2007, Petitioner filed a

Motion/Brief to Amend or Alter the Judgment Pursuant to Rule 72.3

of the Habeas Corpus Petition (Doc. 35).

## III. DISCUSSION

The Magistrate Judge recommends the Petition and the remaining

filings be denied.  (Doc. 32 at 27.)  On March 7, 2007, Petitioner

filed his objections to the Magistrate Judge's Report and

Recommendation.  (Doc. 38.)  For the reasons discussed below, we

will adopt the Report and Recommendation (Doc. 32), deny the

Petition (Doc. 1), and dismiss as moot Petitioner's remaining

filings (Docs. 9, 26, 29).

When a magistrate judge makes a finding or ruling on a motion

or issue, his determination should become that of the court unless

objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53

(1985).  When no objections are filed, the district court need only

review a record for clear error.  *See Cruz v. Chater*, 990 F. Supp.

375, 376-78 (M.D. Pa. 1998).  However, when a petitioner files

objections to a magistrate judge's Report and Recommendation, the
district judge makes a *de novo* review of those portions of the
report or specified proposed findings or recommendations to which
objection is made.  *See Cippolone v. Liggett Group, Inc.*, 822 F.2d
335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).
Therefore, we will review *de novo* those portions of the
recommendation to which Petitioner objects and review the remaining
recommendations for clear error.

**A.    HABEAS CORPUS PETITION**

We first address Petitioner's § 2241 habeas corpus claims.  In
his objections to the Report and Recommendation recommending denial
of Petition, Petitioner challenges the sufficiency of the evidence
at his disciplinary hearing on May 1, 2006, which resulted in the
loss of good conduct time as well as other sanctions.  (Doc. 38.)
Additionally, Petitioner alleges he was denied due process under
the United States Constitution at his disciplinary hearing.  (*Id.*)

**1.    SUFFICIENCY OF THE EVIDENCE**

We turn to Petitioner's objection to the Magistrate Judge's
recommendation that the evidence was sufficient to support the
DHO's determination Petitioner committed the prohibited acts.
(Doc. 38 at 6-7.)  The Magistrate Judge determined the evidence was
sufficient to warrant the DHO's finding that Petitioner committed
the prohibited acts. (Doc. 32 at 15-26.)  We agree the evidence
cited by the DHO in her report was sufficient to find Petitioner

guilty of the prohibited conduct and Petitioner was provided with all that due process required during the prison disciplinary proceedings.

In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the United States Supreme Court held the standard of evidence required to comport with due process in prison disciplinary hearings is whether there is "some evidence" in the record to sustain a finding that the inmate committed the alleged offense.  The Supreme Court in *Hill* explained the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455-56.

After reviewing the record including the *in camera* documents submitted by Respondent, we find the decision of the DHO satisfies the "some evidence" standard.  *See id*.  Here, the DHO determined Petitioner committed the prohibited conduct.  In the disciplinary hearing report explaining the basis of her findings, the DHO described the contents of SIA Acre's investigation report.  The DHO's report indicates SIA Acre relied on surveillance camera footage and corroborating witness statements.  The investigation report concluded Petitioner was in possession of a cellular telephone for the purpose of communicating with inmates in

10

furtherance of departing the federal prison camp and receiving money for such assistance.  Additionally, the investigation report concludes Petitioner departed the prison camp on several occasions. The DHO noted Petitioner was made aware of SIA Acre's investigation report.

In her disciplinary hearing report, the DHO described the hazardous nature of a cellular telephone in a prison setting.  The DHO observed the possession of a cellular telephone in a correctional institution can seriously jeopardize the security of the prison and is a threat to the safety of the staff, inmates, and general public.  As noted by the DHO, a cellular telephone provides an inmate with the opportunity to make unmonitored calls. According to the DHO, such calls, "[C]an contain threats to the general public[,] plans for an escape attempt[,] or planning [] other illegal activity."  (Doc. 14, Exhibit 1 at 11.)

Moreover, the DHO considered the handwritten statements of other inmates submitted by Petitioner describing how either the inmate making the statement did not implicate Petitioner in any wrongdoing or the inmate authoring the statement was promised leniency for providing testimony against Petitioner.  The DHO found these statements lacked credibility given the inmates had offered contradictory testimony throughout the disciplinary process. Additionally, the DHO found the statements submitted by Petitioner were of lesser weight than the more credible statements contained

11

in SIA Acre's investigation report.  The DHO observed SIA Acre had nothing to gain by submitting false information and that Petitioner was interviewed in the presence of agents from the Federal Bureau of Investigation and the Office of the Inspector General.

The DHO also considered Petitioner's own statement that, "Busby, Williams, and Powell [other inmates] told me that all they wanted to know was about the police and not to tell them anything. They were scared." (Doc. 14, Exhibit 1 at 11.)  The DHO found this statement indicated the inmates were attempting to corroborate their response to the investigation.  In her report, the DHO observed Petitioner offered no evidence to dispute the charges other than a denial.  Thus, we agree with the Magistrate Judge's conclusion the record contains "some evidence" to support the DHO's finding Petitioner committed the prohibited acts.  *Hill*, 472 U.S. at 455-56.

## 2.   DUE PROCESS

Next, we turn to Petitioner's objections to the Magistrate Judge's finding that Petitioner received all required due process protections concerning his disciplinary proceedings.  (Doc. 38 at 1-5.)  Based on the following analysis, we agree with the Magistrate Judge and find no violation of due process regarding Petitioner's disciplinary proceeding.  (*See* Doc. 32 at 22-26.)

We first address Petitioner's assertion that the notice of his charges was constitutionally infirm where the DHO amended his code

305 - possession of anything unauthorized charge to a code 108 - possession of a hazardous tool (cell phone). (Doc. 38 at 3-5.)  We agree with the Magistrate Judge's determination Petitioner received proper notice of his charges and was timely advised of his rights concerning his disciplinary hearing. (*See* Doc. 32 at 24.)

The Bureau of Prisons ("BOP") has specific procedures for inmate discipline pursuant to 28 C.F.R. § 541.10, *et seq.*  The regulations, in relevant part, provide:

> [I]f the DHO finds that the inmate has committed a prohibited act(s) other than the act(s) charged, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and code references to charges which were proved.

§ 541.17(f).

In *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), the United States Supreme Court described the constitutional due process requirements for prison disciplinary proceedings implicating the infringement of a cognizable liberty interest, such as the loss of good time credits.  In relevant part, *Wolff* requires an inmate to receive at least twenty-four (24) hours notice of the alleged violations in writing.  *Id.* at 564.  The Court observed, "[T]he function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 563-67.  Additionally, the fact finder must state in writing the evidence relied upon and the reasons for the disciplinary action.  *Id.*

According to Petitioner, he should have been given an additional written notice of the code 108 amended charge twenty-four hours in advance of his hearing on that charge. (Doc. 38 at 3-5.)  Moreover, he alleges he was not re-advised of his rights at the hearing as reflected in the DHO's report. (*Id.*)

We note the regulations governing federal prison disciplinary hearings authorize a disciplinary hearing officer to change the charges on the incident report to conform to those charges which the evidence at the hearing proves an inmate committed and record such change on the report. *See* 28 U.S.C. § 541.17(f).  Here, the DHO determined the evidence established Petitioner committed a violation of the more serious code 108 - possession of a hazardous tool (cell phone) and not the lesser offense of a code 305 - possession of anything unauthorized as originally charged.  The regulations permitted the DHO to make such a finding and to record the change on the incident report. *See id.*

It is Petitioner's contention that because the DHO changed the offense code 305 to a code 108 offense at the hearing he did not receive notice twenty-four (24) hours prior to the hearing as required by *Wolff*.  However, in *Wolff*, the United States Supreme Court explained the purpose of prior notice is two-fold: 1) to give the defending party an opportunity to marshal the facts in his defense; and 2) to clarify what the charges are, in fact. *Wolff*, 418 U.S. at 564.

14

Here, the incident report provided to Petitioner more than twenty-four hours before his hearing contained all the necessary facts to defend a charge for the possession of a cellular telephone and money for the purpose of aiding other inmates attempting to leave the prison camp.  Petitioner required no more notice to defend against a charge of either a code 305 - possession of anything unauthorized as originally charged or the code 108 - possession of a hazardous tool (cell phone) of which Petitioner was ultimately found guilty.  The factual nature of the alleged prohibited conduct in the incident report was the same.  We agree with the Magistrate Judge's determination Petitioner had adequate notice pursuant to *Wolff*.

Petitioner additionally asserts he was never re-advised of his rights and he did not waive any rights at his hearing.  (Doc. 38 at 5.)  The DHO indicated in her report that she re-advised Petitioner of his rights after she changed the offense code 305 to a code 108 and Petitioner elected to proceed with the hearing.  Petitioner has continuously contended he should be appointed an attorney to obtain an affidavit from his staff representative, Chaplain Sabree, to confirm his assertion.  However, we do not see how Petitioner was prevented from obtaining any supporting affidavit from Chaplain Sabree, or any other person, to support his claims on this point.  We find Petitioner's unsupported denial of the accuracy of the DHO's report insufficient to counter the report's indication that

15

the DHO re-advised Petitioner of his rights.

Even if Petitioner was not re-advised of his rights at the hearing, this argument is of no moment.  All that due process requires is that Petitioner received notice of his rights at least twenty-four (24) hours in advance of his hearing.  *See Wolff*, 418 U.S. at 564.  Here, Petitioner does not dispute he received notice of his rights twenty-four (24) hours in advance.  In fact, the incident report states Petitioner received notice of his rights on April 11, 2006.  The hearing was held twenty-nine (29) days later on May 10, 2006.  Neither our research, nor any argument made by Petitioner, reveals the DHO was required to have delayed proceedings another twenty-four (24) hours merely to re-advise Petitioner of the rights he unarguably had been advised of before the hearing.

Next we address Petitioner's contention that he did not have an opportunity to challenge the *in camera* statements and did not know of their existence until this action.  (Doc. 38 at 6.) Petitioner supports his contention citing the DHO's report which in one section indicates no confidential information was used.  (*Id.*) We find Petitioner had ample opportunity to challenge the substance of the information contained in SIA Acre's investigation report. We also conclude Petitioner was not entitled to review the specific information contained in the report.  Additionally, the report sufficiently provided Petitioner notice that confidential

information was used and the nature of the information.

The Third Circuit Court of Appeals observed:

> [A] prison disciplinary committee need not reveal at a disciplinary hearing evidence bearing on the reliability of confidential informants if prison officials believe that such evidence is capable of revealing the identity of the informants and if the evidence is made available to the court for *in camera* review[.] . . . In *Baxter v. Palmigiano*, 425 U.S. 308, 322 n.5 (1976), the Supreme Court squarely held that a prison disciplinary committee is not required to base its determination solely upon the evidence presented at the hearing, and on numerous occasions the Court has stated that an inmate's confrontation and cross-examination rights are subject to the sound discretion of prison officials.

*Henderson v. Carlson*, 812 F.2d 874, 880 (3d Cir. 1987).

Additionally, the Third Circuit held:

> [W]hen a prison tribunal's determination is derived from an unidentified informant, the procedures approved in *Gomes v. Travisono* must be followed to provide minimum due process.
> "(1) [T]he record must contain some underlying factual information from which the [tribunal] can reasonably conclude that the information was credible or his information reliable; (2) the record must contain the informant's statement [written or as reported] in language that is factual rather than conclusionary and must establish by its specificity that the informant spoke with personal knowledge on the matters contained in such statement."

*Helms v. Hewitt*, 655 F.2d 487, 502 (3d Cir. 1981), *rev'd on other grounds*, 459 U.S. 460 (1983).

When a procedural error is alleged in the context of a prison

disciplinary proceeding, the Third Circuit Court of Appeals has explained a court should not overturn the outcome of the proceeding without making an assessment of whether the error was harmless or prejudicial. *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (*holding* that although officials used the wrong chain of custody form during prison disciplinary investigation, error was harmless considering the form contained the complete record of custody, thus, no prejudice resulted).

We conclude, the factual assertions in the documents were made known to Petitioner in the incident report.  It was alleged Petitioner possessed a cellular telephone and received money for aiding other inmates leave the camp and that he also left the camp. Specifically, the incident report identified the investigation report of SIA Acre.  The incident report cited the supporting information of the investigation report as surveillance camera footage and corroborating witness statements.  Thus, Petitioner was given sufficient information to prepare a defense regarding any allegation for any offense concerning the possession of a cellular telephone and money in the furtherance of aiding other inmates to leave the camp, as well as his own absconding.

Moreover, this information was provided on April 7, 2006, to Petitioner in the form of a written incident report.  Petitioner's disciplinary hearing was held on May 10, 2006.  Thus, Petitioner received more than a month advance notice of the information

18

necessary to defend against the charges.

As we previously discussed, the information contained in the *in camera* documents is of a sensitive nature implicating the security of the prison institution and the safety of the staff, inmates, and general public. The Magistrate Judge determined the nature of the information warranted placing the documents under seal and reviewing the information *in camera*. We have reviewed the *in camera* documents and note the information was adequately outlined in the incident report so as to provide Petitioner a meaningful opportunity to challenge the charges against him. Given the sensitive nature of the documents and the more pressing need to maintain institutional security, Petitioner was not entitled to view the specific contents of documents. *See Henderson*, 812 F.2d at 880.

Additionally, the DHO was entitled to consider the documents and rely on their veracity. The DHO found the information was credible and of greater weight than the statements submitted by Petitioner. Moreover, the DHO noted in her report the information in the *in camera* documents was factually sufficient to establish Petitioner committed the offenses. After our review of the documents, we agree the record establishes the credible and reliable nature of the information and the information is of first hand witnesses with specific knowledge of Petitioner's prohibited conduct. Thus, the DHO was entitled to rely on any confidential

19

information contained in the investigation report.  *See Helms*, 655 F.2d at 502.

We note the DHO's report indicates in one section that no confidential information of informants were used but not revealed. However, the body of the report reciting the DHO's findings and conclusions does indicate the investigation conducted by SIA Acre included witness statements and surveillance footage not provided to Petitioner but the existence of which Petitioner was made aware. Although one section of the report indicates no confidential information was used, the body of the report adequately described the nature of the confidential information relied upon and the reasons for such reliance.  Any error on the report in this respect was, therefore, harmless and Petitioner has not demonstrated any resulting prejudice.  *See Elkin*, 969 F.2d at 53.

**B.    PETITIONER'S OTHER FILINGS**

Given our decision to deny the Petition (Doc. 1), Petitioner's remaining filings are dismissed as moot.  These remaining filings are: Consolidated Motion for, and Brief in Support of Preliminary Injunction (Doc. 9); Motion/Brief for Clarification and Reconsideration of Court Order dated January 24, 2007, for Motion to Compel (Doc. 26); and Petitioner's Motion and Brief for Writ of Mandamus pursuant to 28 U.S.C. § 1361 Granting the Petitioner's Petition for Writ of Habeas Corpus (Doc. 29).

**C.     CONCLUSION**

The Report and Recommendation (Doc. 32) is adopted.   The Petition for Writ of Habeas Corpus (Doc. 1) is denied. Petitioner's remaining filings are dismissed as moot.   These remaining filings are: Consolidated Motion for, and Brief in Support of Preliminary Injunction (Doc. 9); Motion/Brief for Clarification and Reconsideration of Court Order dated January 24, 2007, for Motion to Compel (Doc. 26); and Petitioner's Motion and Brief for Writ of Mandamus pursuant to 28 U.S.C. § 1361 Granting the Petitioner's Petition for Writ of Habeas Corpus (Doc. 29).

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

Dated: July 26, 2007

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANKLIN REDDING,                    :
                                     :
      Petitioner,                    :      CIVIL ACTION NO. 06-CV-2254
                                     :
      v.                             :
                                     :      (JUDGE CONABOY)
WARDEN RONNIE HOLT,                  :
                                     :      (Magistrate Judge Blewitt)
      Respondent.                    :

## ORDER

AND NOW, this 26th day of July 2007, for the reasons discussed in the accompanying Memorandum, the following is ordered:

1.   The Magistrate Judge's Report and Recommendation (Doc. 32) is adopted;

2.   The Petition for Writ of Habeas Corpus (Doc. 1) is denied;

3.   Petitioner's remaining filings are dismissed as moot, and these remaining filings are: Consolidated Motion for, and Brief in Support of Preliminary Injunction (Doc. 9); Motion/Brief for Clarification and Reconsideration of Court Order dated January 24, 2007, for Motion to Compel (Doc. 26); and Petitioner's Motion and Brief for Writ of Mandamus pursuant to 28 U.S.C. § 1361 Granting the Petitioner's Petition for Writ of Habeas Corpus (Doc. 29);

4.   There is no basis for the issuance of a certificate of appealability; and

5.   The Clerk of Court is directed to close this case.


                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge